IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DEMETRIUS HILL,                          :
                                         :
        Petitioner                       :
                                         :
    v.                                   :    CIVIL NO. 4:CV-13-1087
                                         :
DHO JORDAN,                              :    (Judge Brann)
                                         :
        Respondent                       :

**MEMORANDUM**

November 13, 2014

**Background**

Demetrius Hill, an inmate presently confined at the Canaan United States Penitentiary, Waymart, Pennsylvania (USP-Canaan), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Hill's pending action does not challenge the legality of his criminal conviction or the resulting sentence. Rather, Petitioner seeks relief with respect to two (2) institutional misconduct charges he received for alleged misuse of the telephone. See Doc. 1, p. 1. Service of the petition was previously ordered.

On October 27, 2011, Petitioner was issued a misconduct, Incident Report (IR) # 2226599, which charged him with use of the telephone for abuses other

than criminal (a Code 297 offense) and giving and/or receiving anything of value to another inmate (a Code 328 offense).[1] It was alleged that while Inmate Hill was on telephone restriction, a fellow prisoner placed a call on the Petitioner's behalf to Jessica Hill on October 19, 2011 and passed messages back and forth between the Petitioner and Ms. Hill.  The misconduct concluded that Hill and the other prisoner had engaged in actions which circumvented institutional phone monitoring procedures.

The second misconduct, IR # 2226601, which was also issued on October 27, 2011, similarly charged Hill with Code 297 & 328 offenses.  Those charges stemmed from alleged conduct which transpired approximately three days after the initial incident.  Specifically, it was as asserted that on October 22, 2011 Hill used another inmate's phone account and PAC number to place a phone call.[2]

On November 2, 2011, the Unit Discipline Committee (UDC) referred both charges to a Disciplinary Hearing Officer (DHO) for further proceedings.

---

[1] The BOP has specific guidelines for inmate disciplinary procedures. Prohibited acts are categorized according to the severity of the conduct.  For instance, Code 100 offenses are deemed to be of the greatest severity while Code 300 offenses fall within the moderate category.  See 28 C.F.R. § 541.10, et seq.

[2] Petitioner indicates the second incident involved a different inmate than the individual who allegedly assisted him in the conduct underlying IR # 2226599.   See Doc. 1, p. 2.

Hearings on both charges were conducted by DHO Jordan on March 22, 2012. With respect to IR # 2226599 Petitioner was found guilty of the Code 297 offense and was issued sanctions including a twenty-seven (27) day loss of good conduct time. See Doc. 13, p. 25. The Petitioner was also found guilty of the Code 297 offense charged in IR # 2226601 and similarly sanctioned to a twenty-seven (27) day loss of good conduct time. See id. at p. 50.

Petitioner initially claims that he is entitled to federal habeas corpus relief on the grounds that he was convicted of both charges solely because he is a Black man in violation of his equal protection rights. See Doc. 1, p. 1. Petitioner explains that two White prisoners were involved in the underlying incidents. Both of those White inmates were issued disciplinary charges and entered guilty pleas. However, Hill asserts that the White prisoners were given less severe sanctions.

Hill next asserts that was never properly served with one of the incident reports and he requested but was denied the assistance of a staff representative of his choice.[3] With respect to IR # 2226601, Hill vaguely maintains that said charge was meritless because the prison's voice recognition system prevents him from using another's prisoner's account to place a call. The Petitioner also contends

---

[3] Hill indicates that he requested that a White female staff member act as his representative, but his request was denied on racially motivated grounds.

that the presiding DHO denied him opportunity to contact witnesses or obtain documentary evidence. It is also alleged that the DHO made racially derogatory remarks and that excessive racially motivated sanctions were imposed.

**Discussion**

Habeas corpus review under § 2241 "allows a federal prisoner to challenge the 'execution' of his sentence." Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005). A habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement in prison. Preiser v. Rodriguez, 411 U.S. 475 (1973), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir. 1993). Federal habeas corpus review is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002).

The United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), held that a prisoner deprived of good time credits as a sanction for misconduct is entitled to certain due process protections in a prison disciplinary proceeding. Wolff noted that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the United States Supreme Court held that a prisoner facing a loss of good time credits is entitled to some

procedural protection.  Id. at 563-71.

A subsequent United States Supreme Court decision, Sandin v. Conner, 515 U.S. 472, 480-84 (1995), reiterated that the due process safeguards set forth in Wolff must be provided when the challenged disciplinary proceeding results in a loss of good time credits.  See also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner has a constitutionally protected liberty interest in good time credit); Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).   Since Petitioner was undisputably sanctioned to a loss of good time credits with respect to both misconducts which adversely affected the duration of his ongoing federal confinement, his claims are properly raised in a § 2241 petition.

**Administrative Exhaustion**

Respondent's initial argument seeks dismissal of the portion of the petition pertaining to IR # 2226599 and the October 19, 2011 phone call on the grounds that Hill failed to exhaust his available administrative remedies.  See Doc. 12, p. 19.  Specifically, it is asserted that Petitioner never filed a timely  administrative appeal from the DHO's decision with respect to IR # 2226599

It is well-settled that "[a] federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted all available administrative remedies." Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)(emphasis added).  A

party is required to exhaust administrative remedies before seeking relief in federal court unless Congress has indicated to the contrary or the available administrative remedies are inherently inadequate. Young v. Quinlan, 960 F.2d 351, 356 (3d Cir. 1992). Exhaustion is only excused where pursuit of administrative remedies would be futile, the agency's actions clearly and unambiguously violate statutory or constitutional rights, or the administrative procedures would be inadequate to prevent irreparable harm. Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

The Federal Bureau of Prisons (BOP) has a well established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." See 28 C.F.R. § 542.14(a). The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20)

calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id. An inmate appealing a DHO's hearing decision may appeal directly to the Regional Director.

In support of the non-exhaustion argument, Respondent has submitted a declaration under penalty of perjury by BOP Supervisory Paralegal Vanessa Herbin-Smith. See Doc. 13, p. 53, Exhibit 2. Herbin-Smith states that a review of the BOP's computerized database of administrative remedies reveals that between October 27, 2011 and June 6, 2013 Hill filed 270 administrative remedy requests,[4] of which pertained to IR # 2226601 and which were fully exhausted. See id. at ¶ 7.

Herbin-Smith's declaration elaborates that although Hill administratively exhausted an appeal of IR # 2226601, "there is no record that Hill filed any administrative remedy appeals challenging disciplinary action taken in connection with Incident Report Number 2226599." Id. Based upon that failure, Respondent

concludes that Petitioner's claims pertaining to IR # 2226599 are subject to dismissal on the basis of non-exhaustion. Accompanying Herbin-Smith's declaration are copies of Petitioner's relevant BOP administrative remedy records.

Petitioner generally counters that exhaustion should be waived because the same issues which were exhausted in his appeal of IR # 2226601 would have been asserted in any appeal of IR # 2226599 . See Doc. 16, p. 6. Moreover, Hill contends that he could not pursue an administrative appeal because he never received the DHO's decision in IR # 2226599.

Hill' pending § 2241 petition is dated April 13, 2013,[4] and will be deemed filed as of that date. See Houston v Lack, 487 U.S. 266 (1988)(a prisoner's action is deemed filed at the time it is given to prison officials for mailing to the Court).

The Court of Appeals for the Third Circuit has repeatedly recognized that a federal prisoner must exhaust available administrative remedies before seeking habeas corpus relief in federal court. Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Unless it would be futile to pursue administrative remedies, courts have rejected attempts to obtain judicial relief by prisoners who have disregarded the administrative remedy process. See Ramsey v. United States, No. Civ. 1:CV-05-1476, 2006 WL 1412767 at *1 (M.D. Pa. May 22,

---

[4] See Doc. 1, p. 7.

2006)(Caldwell, J.); Porte v. Warden, FCI-Allenwood, No. Civ. 4:CV-04-1534, 2006 WL 47654 at *3-5 (M.D. Pa. Jan. 9, 2006)(Jones, J.).

Based upon the undisputed record, Petitioner initiated this federal habeas corpus action before exhausting his available BOP administrative remedies in regards to IR # 2226599. Petitioner does not dispute that he knew how to pursue administrative relief. Hill also offers no viable explanation as to why he failed to properly pursue an administrative appeal with respect to IR # 2226599 prior to the initiation of this action.

It is noted that Hill's petition asserts that he was never served with a copy of the incident report. However, there is no contention raised therein that the Petitioner was not given a copy of the DHO's report for IR # 2226599. Moreover, the petition clearly indicates that he was served with the DHO's reports for both misconducts. See Doc. 1, p. 5. Thus, Petitioner's assertion in his reply that exhaustion should be excused because he never received the DHO's decision in IR # 2226599 lacks credibility.

Petitioner's other argument that exhaustion should be waived because his exhausted administrative appeal raised the same issues that would have been pursued in any appeal of IR # 2226599 does not provide an arguable basis for a determination under the limited Lyons exceptions that he should be excused from

the exhaustion requirement.  Moreover, Hill's documented history of pursuing BOP administrative remedies, especially his multiple appeals of IR #2226601 undermines any argument that he was denied access to the administrative process itself.

Based upon those considerations, and Hill's implied acknowledgment that he failed to administratively appeal  IR  # 2226599, a finding of non-exhaustion is appropriate under the standards developed in <u>Moscato</u> and <u>Ridley</u>.  See <u>Murray v. Grondolsky</u> 2009 WL 2044821 *2 (D.N.J. 2009)(dismissal of § 2241 action for non-exhaustion of administrative remedies); <u>Morgan v. Borough of Carteret</u>, 2008 WL 4149640 *5 (D.N.J. 2008) (dismissal for non-exhaustion of administrative remedies).  To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing prisoners to invoke the judicial process before completing administrative review.

## IR # 2226601

Respondent asserts that Petitioner is not entitled to relief with respect to his IR # 2226601 related claims since all evidentiary and due process requirements were satisfied with respect to his DHO proceedings.  <u>Wolff</u> set forth five requirements of due process in a prison disciplinary proceeding:  (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance

written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  Id.  An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at v. Hill, 472 U.S. 445, 453-56 (1985).  In that case, the United States Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

Petitioner initially contends that "he was never given the I.R. 24 hours prior to the hearing."  Doc. 1, p. 3.  Hill's Petition states that he "was given two incident reports (though he was never issued said report)."  Doc. 1, p. 1.   Hill claims that he was out to court and when he returned he was provided with a UDC hearing and the DHO simply read the IR at his hearing.

Wolff requires that an inmate accused of a disciplinary infraction be provided with advance written notice of the charges against him.  Notice must be provided twenty four (24) hours prior to the time of hearing.  Under BOP

regulations[5], a prison staff member shall provide an inmate with a written copy of the charges levied against him ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.  See 28 C.F.R. Section 541.5.

Respondent contends that copies of both of IRs at issue herein were delivered to Petitioner on October 27, 2011.   At the same time, a staff member read the charges to Hill.  According to a submitted copy of a written report by Lieutenant Mattingly, upon delivery Hill allegedly crumbled up the incident reports and threw them in the toilet.  See  Doc. 13, p. 7.

The Respondent has submitted documentary evidence showing that Petitioner was served with both IRs on October 27, 20111.  It is undisputed that a UDC haring on the charges was conducted on November 2, 2011 during which the substance of the charges was discussed with the Petitioner.  Hill admits that during the UDC hearing he requested a staff representative "to aid him in obtaining prisoner/witness statements, listen to the two phone calls which were the subject of the incident rports, obtain copies of the phone manuals e.g. the directions on how

---

[5] Absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994)(in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

said institutional phones operated and assist in presenting a defense to said reports." Id. at p. 2.

Hill's Petition contains an inconsistent statement as to whether he was served with the misconduct charges on October 27, 2011.  As shown above, Hill's Petition clearly indicates that he was well aware of the exact nature of the charges and underlying facts set forth in the IRs at the time of his November 2, 2011 UDC proceedings.  The Petitioner's DHO hearings were not convened until March 22, 2012.  Based upon those considerations, this Court is satisfied that Hill was afforded with the amount of advance notice contemplated under Wolff.

Petitioner does assert that he requested, but was denied the opportunity to be provided with a staff representative of his choosing.  The undisputed record does establish that Hill requested that a female staff member M. Hummel act as his staff representative.  See Doc. 13 , p. 11.  However, it is undisputed that Hummel declined to serve in that capacity due to the Plaintiff's prior history of "sexual misconduct directed at female staff." Id. at p. 13.  Petitioner then requested that two additional female staff members serve as his representative.  One of those employees was not scheduled to work on the day of the DHO hearing, the other employee similarly declined because of Hill's record of inappropriate conduct towards female staff members.

13

Although Petitioner was offered an opportunity to request a substitute male staff representative, he failed to do so.  However, a "Warden appointed staff representative", Case Manager Zegarski was assigned to represent Petitioner's interests.  Id. at p. 15.

Petitioner admits that he has a "lengthy disciplinary history" consisting of over 100 misconducts which includes four IRs written by female staff members.  Doc. 17, p. 4.  There is no Wolff due process requirement that entitles Hill to a specific staff representative.  Second, Plaintiff acknowledges that he was issued multiple misconduct charges for conduct involving female staff members, the reluctance of female staff members to undertake his representation was reasonable.  Furthermore, Petitioner declined the opportunity to request a substitute male representative.  Since Petitioner was not entitled to representation by a specific representative  and his request for appointment of a staff representative was granted, that prong of Wolff will be deemed satisfied.[6]

Hill next contends that "all evidence and witnesses he requested" were denied by the DHO.  See  Doc. 1, p. 2.  The Petition specifically asserts that  two requested witnesses, one of the inmates who was charged as being an accomplice

---

[6] Hill's assertion that Zegarski's representation was deficient is undermined by the record which shows that Petitioner did not cooperate with Zegarski.

14

in the alleged telephone misuse and Staff Member Lyons were not allowed.

Wolff includes a procedural safeguard which requires that an inmate facing institutional disciplinary proceedings be granted an opportunity to call witnesses and present documentary evidence.  However, this privilege is not absolute and an inmate's request to present evidence may be denied if it would threaten institutional security or correctional goals

It is initially noted that the DHO Jordan's undisputed written reports indicates that Hill submitted a one (1) page handwritten statement to the DHO. Second, the two prisoners who were charged as Hill accomplices with respect to the events of October 19, 2011 and October 22, 2011 previously plead guilty to institutional disciplinary charges stemming from their respective roles in those incidents.

Moreover, the DHO's written reports included a detailed written consideration of a statement by the inmate witness requested by Hill to the DHO on November 10, 2011.  The requested inmate was one of the Petitioner's accomplices, who had already pled guilty to a misconduct charge stemming from the same incident.  According to the DHO's report, the requested inmate witness made a statement to the DHO on November 10, 2011 which admitted that he had allowed Inmate Hill to place a phone call with his phone account information.

See Doc. 13, p. 43.

The DHO denied the request for the second requested witness, Inmate Telephone System Technician Lyons to appear because the Petitioner would not disclose the purpose of her testimony or any reason as to why she would be a relevant witness. When questioned by the DHO Hill repeatedly refused to state if Lyons was an eyewitness, a character witness, or a subject matter witness. See id. at p. 44. Based upon the refusal of Hill to state the purpose of Lyons' testimony, the Petitioner's request was reasonably denied by the DHO.

It is also noted that the October 19, 2011 and October 22, 2011 telephone calls underlying the two IRs were played in Petitioner's presence during the course of the DHO hearing. Based upon the detailed analysis and summary provided by the DHO's written report, Petitioner's denial of due process claims that he was not permitted to call witnesses, give a statement, or view surveillance footage will be denied.[7]

Wolff further directs that the factfinder in a prison disciplinary proceeding must issue a written decision describing the evidence relied upon and stating the rationale behind any decision. The DHO prepared detailed written reports (copies

---

[7] It is also noted that this is not a case which required review of confidential source information.

of which has been submitted and reviewed by this Court) regarding both IRs at issue herein which clearly describes the evidence relied upon in accordance with the requirements of Wolff. Accordingly, this procedural safeguard was likewise satisfied.

In regards to Petitioner's claim that the DHO's finding of guilt was not sufficiently supported by the evidence as required by Hill, a federal court has no duty to independently weigh the evidence, but only to see that there was some evidence or basis in fact to support the finding of guilt. Hensley v. Wilson, 850 F.2d 264 (6th Cir. 1988). The findings in a disciplinary hearing are not arbitrary or capricious if there exists a basis in fact to support a disciplinary hearing officer's findings. Edwards v. White, 501 F. Supp. 8 (M.D. Pa. 1979).

It is the determination of this Court that the Hill requirement that DHO's determination be supported by some evidence was satisfied.[8] This petition simply does not assert that this is the type of a case where the record was so devoid of evidence that the findings by the DHO were without support or otherwise arbitrary. On the contrary the recorded phone calls from October 19, 2022 and October 22, 2011; the testimony and guilty pleas entered by the Petitioner's respective

---

[8] Hill's factually unsupported argument that the prison's voice recognition system prevents him from using another's prisoner's account to place a call does not undermine a determination that the some evidence requirement of Hill was satisfied.

accomplices clearly satisfied the some evidence requiremnt.

Petitioner also asserts that he issued the misconducts and given excessive sanctions as opposed to those imposed against his inmate accomplices because of his race. The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Court of Appeals for the Third Circuit has observed that the equal protection clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated."). In order to establish a viable equal protection claim must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944).

By the Petitioner's own admission he has a lengthy history of disciplinary violation. There is also no factual basis for a claim that he was issed the misconducts because he was Black, a conclusion hwich is bolstered by the fact that his two prisoner accomplices entered guilty pleas and that sufficient evidence was

presented to establish that he committed the acts of misconduct.

Unlike his accomplices, Hill was charged with two separate offenses within a short period of time.  The Respondent also points out that a different DHO presided over the misconduct proceedings of the accomplices.  Moreover, each of the accomplices was also similarly sanctioned to a 27 day loss of good conduct time.  There is also no contention by Hill that the sanctions imposed against exceeded those permitted under BOP regulations.

It is also apparent that Petitioner was the beneficiary and moving force behind the acts of misconduct underlying this matter.  Based upon those considerations, the Petitioner has failed to present sufficient facts which would warrant a finding that he was subjected to greater sanctions because of his race.[9] The petition for writ of habeas corpus will be denied.  An appropriate Order will enter.

                                      BY THE COURT:

                                      s/Matthew W. Brann
                                      Matthew W. Brann
                                      United States District Judge

---

[9] Although this Court never condones the use of racially derogatory remarks, the purported use of racially offensive language by the DHO does not warrant habeas corpus relief.